IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JERMEAL WHITE, | ) | CASE NO. 1:16CV1593 |
| | ) | |
| Petitioner, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| CHARMAINE BRACY, *et al.*, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondents. | ) | |

Petitioner Jermeal White, ("Petitioner" or "White") brings this habeas corpus action

pursuant to 28 U.S.C. § 2254.  Doc. 1.  White is detained at the Trumbull Correctional

Institution, having been found guilty by the Cuyahoga County, Ohio, Court of Common Pleas,

following a bench trial, of two counts of aggravated murder, one count of murder, two counts of

aggravated burglary, three counts of felonious assault, and four counts of kidnapping, all with

one to three-year firearm specifications.  *State v. White*, Case No. CR-14-581732-A (Cuyahoga

Cty. Common Pleas Ct., filed June 23, 2014).  At resentencing, the trial court merged the

relevant related counts and sentenced White to life in prison with the possibility of parole after

25 years for aggravated murder, plus 3 years for the attendant firearm specification, for a total of

28 years, to be run concurrently with a fourteen-year sentence for aggravated burglary (eleven

years plus a 3-year firearm specification) and an eleven-year sentence for felonious assault (eight

years plus a 3-year firearm specification), for an aggregate sentence of life in prison with the

possibility of parole after 28 years.  Doc. 8-1, pp. 161-162.[1]

On June 16, 2016, White filed his Petition for Writ of Habeas Corpus setting forth four

grounds for relief.  Doc. 1, pp. 4-10.  This matter has been referred to the undersigned Magistrate

---

[1]  Doc. page citations are to ECF Doc. page numbers.

Judge for a Report and Recommendation pursuant to Local Rule 72.2.  As set forth more fully below, Grounds 1, 3 and 4 are not cognizable and Ground 2 fails on the merits.  Thus, the undersigned recommends that White's Petition for Writ of Habeas Corpus (Doc. 1) be **DISMISSED** in part and **DENIED** in part.[2]

## I.  Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct.  28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008).

### A.  State Court Action

#### 1.  Underlying Facts

The following summary of underlying facts is taken from the opinion of the Cuyahoga County Court of Appeals, Eighth Appellate District of Ohio:[3]

> {¶ 2} On December 22, 2012, between 6:00 p.m. and 7:00 p.m., two men entered a house on East 99th Street in Cleveland, Ohio, occupied by Don'Tel Sheeley, Serenity Sheeley, Kimmetta Sheeley, Mack Miller, Special Thurman, Delrico Sheeley, Taranda Emery, Marrisa Sheeley, and a few others. Testimony from several witnesses established that these two men, armed with handguns, entered the house to rob Don'Tel of marijuana he allegedly sold. In the course of this robbery Don'Tel was shot three times and died. After the shooting, the two men fled without taking anything from the house.
>
> {¶ 3} Three bullets recovered from Don'Tel's body revealed that they all came from a single weapon, later identified as a .40 caliber handgun. After Richard Harris was arrested in possession of a stolen vehicle, he provided police with information that led to the discovery of this handgun in possession of Darrell Davis. At first, Harris acted as an informant, but quickly became a suspect. Police learned it was Harris who had sold the

---

[2]  The grounds in the petition that are not cognizable result in a dismissal; the ground in the petition that is addressed on the merits results in a denial.

[3]  White has not demonstrated by clear and convincing evidence that the state court's findings were incorrect. Accordingly, the state court's findings are presumed correct.  *See* 28 U.S.C. § 2254(e)(1); *see also Railey*, 540 F. 3d at 397.

gun to Davis. Davis testified that he arranged to purchase the gun from Harris and another individual later identified as appellant. Eventually, Harris agreed to testify against appellant in exchange for a plea deal that resulted in his imprisonment for life, with parole eligibility after 18 years.

{¶ 4} According to Harris, he, appellant, and Lateef Taylor planned to rob Don'Tel of marijuana. The three got a ride from Ashaka Johnson from the west side of Cleveland to the east side, near Don'Tel's house. Taylor, a friend of the Sheeley family, then went inside the house to purchase some marijuana from Don'Tel. He informed appellant and Harris of the situation in the house, including that Don'Tel had a firearm on or near his person. Harris and appellant then went to the house, knocked on the side door, and forced their way through once it began to open.

{¶ 5} Harris testified that he entered into a kitchen where he attempted to hold several occupants there at gunpoint while appellant ran to the front of the house where Taylor had told them Don'Tel was located. Seated in that room were Don'Tel and Taranda Emery. She testified she was in the house at Don'Tel's invitation because she was supposed to meet a friend of hers who lived in the apartment above Don'Tel's, but no one was home. She was seated on the couch, and Don'Tel was in a chair next to it. She was watching him play a video game. She observed a handgun in Don'Tel's lap. Emery heard a knock on the door and turned to see a man wearing a partial mask heading from the kitchen through the dining room toward the living room, where she was seated. This man had a gun. She testified that she jumped up and ran behind the television and curled up into a ball and prayed. She heard a number of shots fired, but nothing else.

{¶ 6} Kimmetta, Don'Tel's mother, testified she was about to take out the trash when she heard a knock on the side door of the home off the kitchen. As she opened the door, two men rushed in with guns. In the kitchen were Special, Kimmetta, and Mack. Serenity was in the bathroom off the kitchen. The first male entered and put a gun to Kimmetta's chest and then chased Special and Mack to the bathroom when they ran. The second male that entered went to the front room. She described the first person who entered as a shorter African–American male with a lighter skin tone; the second one was a taller, thinner African–American male with a dark complexion.

{¶ 7} Mack testified he was in the kitchen of the home talking to his cousins when two men with guns entered. Mack's descriptions of the men were largely consistent with Kimmetta's except the taller individual entered first. Mack stated the shorter individual stayed in the kitchen and held them at gunpoint. He and his cousin Special ran to the bathroom where Serenity was already located. He attempted to shut the door, but he struggled to close it because the gunman was trying to get in. Mack held the door shut while the girls jumped out the window. Mack followed after they escaped.

{¶ 8} Kimmetta said she followed the taller assailant into the front room and observed him shoot Don'Tel while he was standing with his hands up. She also testified the other intruder followed them into the front room and shot Don'Tel as well. After the shooting, she was chased into a bedroom by the taller intruder who then pointed his gun at her.

When she asked him why he wanted to shoot her, he exited the bedroom and left the home.

{¶ 9} Harris testified that he was in the kitchen when shots were fired. He ran out of the house followed by appellant. They then met up with Taylor. Harris asked appellant what happened, and Harris testified that appellant said that Don'Tel reached for a gun so appellant shot him. According to Harris, the three got a ride from Johnson[1] back to the apartment where appellant was staying.

> [FN1] Johnson testified he gave appellant and Harris a ride to the east side, but denied giving them a ride home, and text messages sent from Johnson to Harris indicated Johnson refused to wait for Harris and appellant because he thought something was going on and did not want any part in it.

{¶ 10} Police interviewed the occupants of the house on the night of the shooting. No one identified appellant as one of the intruders. Within a few days, Kimmetta and Mack told police that they recognized appellant as the taller individual.

*State v. White*, 2015 WL 3794576, at * 1-3 (Ohio Ct. App. June 18, 2015).

## 2. Procedural History

On January 16, 2014, the Cuyahoga County grand jury indicted White on one count of aggravated murder, R.C. § 2903.01(A) (count 1); one count of aggravated murder, R.C. § 2903.01(B) (count 2); one count of murder, R.C. § 2903.02(B) (count 3); one count aggravated burglary, R.C. § 2911.11(A)(1) (count 4); one count aggravated burglary, R.C. § 2911.11(A)(2) (count 5); one count of felonious assault, R.C. § 2903.11(A)(1) (count 6); two counts of felonious assault, R.C. § 2903.11(A)(2) (counts 7 and 8); two counts of kidnapping, R.C. § 2905.01(A)(2) (counts 9 and 10); and two counts of kidnapping, R.C. § 2905.01(A)(3) (counts 11 and 12), all with 1- to 3- year firearm and forfeiture specifications.  Doc. 8-1, pp. 3-14.  White pleaded not guilty.  Doc. 8-1, p. 15.

On April 30, 2014, White filed a motion to determine the competency of the State's witness, Lateef Taylor, prior to trial.  Doc. 8-1, p. 20.   The trial court held a hearing and thereafter found Taylor competent to testify.  Doc. 8-1, pp. 22, 25; Doc. 9, pp. 330-355.  Against the advice of defense counsel, White waived his right to a jury trial and elected to proceed by

bench trial.  Doc. 8-1, p. 23; Doc. 9, pp. 24-25.  After hearing evidence, the trial court found White guilty on all counts in the indictment.  Doc. 8-1, p. 24.  At sentencing, the trial court merged counts 1-3 (into count 1), counts 4-5 (into count 4), counts 6-7 (into count 6), counts 9-11 (into count 9) and counts 10-12 (into count 10), further merged count 6 into count 1 and count 8 into count 10 (leaving counts 1, 4, 9 and 10), and pronounced the following sentence: life in prison with the possibility of parole after 28 years for aggravated murder, including 3 years for the attendant firearm specification, to be run concurrently with three fourteen-year sentences for aggravated burglary (eleven years plus a 3-year firearm specification) and two kidnapping counts (each eleven years plus a 3-year firearm specification), for an aggregate sentence of life in prison with the possibility of parole after 28 years.  Doc. 8-1, pp. 26-27.

## B. Direct Appeal

On June 23, 2014, White, through new counsel, filed a notice of appeal with the Ohio Court of Appeals.  Doc. 8-1, p. 29.  In his brief, he raised the following assignments of error:

1. The trial court erred by finding Lateef Taylor competent to testify in violation of Appellant's due process right to a fair trial and his Constitutional right to confrontation.

2. Appellant's convictions were not supported by sufficient evidence and the trial court erred by denying his motions for acquittal.

3. The convictions were against the manifest weight of the evidence.

4. The State's use of cell phone records throughout trial deprived Appellant of his Constitutional rights to due process and a fair trial.

5. The sentence the trial court imposed was contrary to law because it was disproportionate and imposed sentences for allied offenses of similar import.

6. Whether Appellant's Fourth, Fifth, Sixth and Fourteenth Amendment rights were violated by the admission of evidence and testimony concerning prison mail that was seized without a warrant.

Doc. 8-1, p. 40. On June 18, 2015, the Ohio Court of Appeals affirmed the trial court's judgment but remanded the case to the trial court to issue a nunc pro tunc entry to reflect accurately what occurred during sentencing with respect to the merger of offenses. Doc. 8-1, pp. 130-131.

### C. Resentencing

On July 21, 2015, the trial court resentenced White per the state Court of Appeals' decision. Doc. 8-1, pp. 161-162. The trial court found that counts 1, 2, 3, 6, 7, 9 and 11 (against Don'Tel Sheely) were allied offences and merged them into count 1; merged count 5 into count 4; and merged counts 8, 10 and 12 (against Kimmetta Sheely) into count 8 (leaving counts 1, 4 and 8); and sentenced White to life in prison on count 1 (aggravated murder), with the possibility of parole after 28 years, including 3 years for the attendant firearm specification, to be run concurrently with a 14-year sentence on count 4 for aggravated burglary (11 years plus a 3-year firearm specification) and an 11-year sentence on count 8 for felonious assault (8 years plus a 3-year firearm specification), for an aggregate sentence of life in prison with the possibility of parole after 28 years. Doc. 8-1, p. 161.

### D. Ohio Supreme Court

On July 24, 2015, White, *pro se*, appealed to the Ohio Supreme Court. Doc. 8-1, p. 134. In his memorandum in support of jurisdiction, he set forth the following propositions of law:

> 1. Whether Appellant's right to due process was violated when the Trial Court found Lateef Taylor competent to stand trial, in violation of his constitutional rights.
>
> 2. Whether there was sufficient evidence to support a conviction under the law.
>
> 3. Whether the convictions were against the manifest weight and should have been dismissed.
>
> 4. Whether the court violated Evid.R. 612 when witnesses improperly utilized records to provide testimony without a proper foundation.
>
> 5. Whether the Defendant-Appellant's Fourth Amendment rights were violated when his mail was seized without a warrant and used as evidence in his criminal trial.

Doc. 8-1, p. 137.  On September 30, 2015, the Ohio Supreme Court declined to accept

jurisdiction of White's appeal pursuant to S.Ct.Prac.R. 7.08(B)(4).  Doc. 8-1, p. 160.

### E. Federal Habeas Petition

On June 16, 2016, White, *pro se*, filed his Petition for a Writ of Habeas Corpus.  Doc. 1.

He listed the following grounds for relief:

<u>**Ground One:**</u> Petitioner's Due Process rights under the Sixth and Fourteenth
Amendments to the U.S. Constitution were violated when the Trial Court found Lateef
Taylor competent to testify at trial.

**Supporting Facts:** The defense objected to Lateef Taylor's testimony and he was
voir dired for competency. Taylor could not recall street names, thought January comes
after February, and that November is after December. He did not remember the month or
the year he was arrested. Despite this testimony, the trial court denied the defense motion
to find Taylor incompetent.

<u>**Ground Two:**</u> Petitioner's convictions were against the sufficiency of evidence, in
violation of his Due Process rights under the Sixth and Fourteenth Amendments to the
U.S. Constitution.

**Supporting Facts:** Petitioner has consistently professed his innocence of the
crimes for which he was convicted. The record provides inconsistent and wholly
insufficient testimony, much of it from self-interested people, trying to lessen their own
punishments. The evidence on record fails to sufficiently establish that Petitioner was an
assailant or at all involved in the crimes alleged in the indictment. None of the witnesses
who knew Petitioner very well identified him as being involved on the night of the
shooting. One of the victims, Kimmetta Sheeley, actually identified Dominic Robinson,
the owner of the murder weapon, as being a person involved in the crimes. Petitioner has
tattoos on his face, and yet none of the eyewitnesses described either suspect as having
facial tattoos. Petitioner's DNA was not found on the gun used in the crimes. Two other
men could not be excluded as having possessed or touched the murder weapon and they
were found in possession of the gun. There was no evidence of prior calculation and
design necessary to sustain a conviction for aggravated murder under O.R.C. 2903.01(A).
The trial court did not find that Petitioner fired the shots that killed the victim. Instead,
the court found that Petitioner was complicit to the offense. The evidence established that
Petitioner and the victim, Don'Tel Sheeley, were friends and there is no evidence of any
strain in the relationship between them. The evidence was also insufficient to sustain a
conviction of felony murder because there is insufficient evidence that Petitioner
committed any of the predicate offenses of felonious assault, aggravated burglary or
kidnapping. The State's evidence does not sufficiently connect Petitioner to any of the
crimes or prove beyond a reasonable doubt that he acted with Richard Harris, a co-

defendant in the case. There is no physical or trace evidence tying Petitioner to the scene or the murder weapon.

**Ground Three:**  Petitioner's Due Process rights under the Sixth and Fourteenth Amendments to the U.S. Constitution were violated when the Trial Court violated Ohio Evid.R.612 by allowing witnesses to improperly utilize records to provide testimony without a proper foundation.

**Supporting Facts:**  The defense objected throughout trial to the State's witnesses improperly testifying from cell phone records. The defense maintained that the State was improperly utilizing the phone records to provide substantive testimony rather than to support existing and independent testimony. The defense objected to the fact that the State never examined the witnesses who allegedly owned or possessed the cell phones about the calls. Over defense objection, one of the witnesses, Shak, was allowed to use cell phone records to testify as to what his phone number was and what Harris's phone number was. However, there was no[] foundation laid that would properly allow the witness to refer to the documents for this purpose. Over defense objection, the court admitted State's exhibits 80, 81, 83, and 84 into evidence, which were all cell phone records, and despite the fact that there was no evidence or testimony to establish that these records were connected to calls actually placed or received by Petitioner.

**Ground Four:** Petitioner's rights under the Fourth Amendment to the U.S. Constitution were violated when his mail was seized without a warrant and used as evidence in his criminal trial.

**Supporting Facts:** Petitioner objected to testimony and evidence concerning jail mail that was seized without a warrant or probable cause and used by the State against him. The trial court admitted the testimony and State's exhibits 86-89. To the extent the letters purportedly written by him were introduced as evidence, they were not properly authenticated to establish him as an author. The State called Maurice Gibson to testify about various pieces of jail correspondence. Gibson was incarcerated at the time of the alleged crimes. The defense objected to the State's use of Exhibit 86 during Gibson's testimony. The letter was purportedly written by Petitioner, however it was not properly authenticated and it was seized by prison officials and delivered to the prosecution without a warrant. Gibson claimed he recognized Petitioner's writing, but there was no foundation laid as to how he could recognize it. State's exhibit 87 was admitted over objection. State's exhibit 88 was objected to as cumulative and irrelevant. The defense also objected to State's exhibit 89. None of the parties to the letters consented to their seizure or use at trial. Gibson was not aware his letters were being copied.

Doc. 1, pp. 4-8.  On September 16, 2016, Respondent filed a Return of Writ (Doc. 8) and White filed a Traverse on November 18, 2016 (Doc. 12).  In her Return of Writ, Respondent argues that

Grounds 1, 3 and 4 are not cognizable and/or fail on the merits and that Ground 2 fails on the merits. Doc. 8, pp. 11-28.

## II. Law

### A.  Standard of Review under AEDPA

In order to obtain habeas relief under 28 U.S.C. § 2254(d), a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involving an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause).  *Id.*

"Under the 'contrary to' clause, a federal habeas court may grant a writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, as well as legal principals and standards flowing from Supreme Court precedent.  *Id.* at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent.  *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005).  If the Supreme Court has not addressed the

petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

In determining whether the state court's decision involved an unreasonable application of law, the court employs an objective standard. *Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

### III. Claim Analysis

White sets forth four grounds for relief in his Petition. Doc. 1, pp. 4-8. The undersigned recommends the Court find that Grounds 1, 3 and 4 are not cognizable and that Ground 2 fails on the merits.

### A. Grounds 1, 3 and 4 are not cognizable

Federal habeas corpus relief is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 US 1, 5 (2010). Generally, alleged errors of state court evidentiary rulings are not cognizable in federal habeas case. *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983). A state court's evidentiary ruling is not subject to federal habeas review unless the ruling itself violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of a fundamentally fair trial,

10

as guaranteed by due process. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). Thus, federal habeas corpus relief is only warranted when a violation of a state's evidentiary rule results in the denial of fundamental fairness and, therefore, a violation of due process. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988).

### 1. Ground 1

In Ground 1, White argues that his due process rights were violated when the trial court found Lafeef Taylor competent to testify at trial. Doc. 1, p. 12. The Ohio Court of Appeals considered this claim:

#### C. Evidentiary Issues

{¶ 40} "A decision to admit or exclude evidence will be upheld absent an abuse of discretion." *O'Brien v. Angley*, 63 Ohio St.2d 159, 163, 407 N.E.2d 490 (1980). Such an abuse is denoted by a decision that is arbitrary, unconscionable, or unreasonable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

#### i. Competency to Testify

{¶ 41} Appellant complains that Taylor should not have been allowed to testify due to a lack of mental capacity.

{¶ 42} The Ohio Supreme Court has stated that the determination of witness competency "is within the sound discretion of the trial judge." *State v. Frazier*, 61 Ohio St.3d 247, 251, 574 N.E.2d 483 (1991). "'The trial judge, who saw the [witnesses] and heard their testimony and passed on their competency, was in a far better position to judge their competency than is this court, which only reads their testimony from the record * * *.'" *State v. Bradley*, 42 Ohio St.3d 136, 141, 538 N.E.2d 373 (1989), quoting *Barnett v. State*, 104 Ohio St. 298, 301, 135 N.E. 647 (1922). Therefore, this court reviews the court's decision for an abuse of discretion. *State v. Smiley*, 8th Dist. Cuyahoga No. 97047, 2012–Ohio–1742, ¶ 13.

{¶ 43} Evid.R. 601(A) specifies that every person is competent to testify except "[t]hose of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." "'[A] person, who is able to correctly state matters which have come within his perception with respect to the issues involved and appreciates and understands the nature and obligation of an oath, is a competent witness notwithstanding some unsoundness of mind.'" *State v. Bradley*, 42 Ohio St.3d 136, 140–141, 538 N.E.2d 373 (1989), quoting *State v. Wildman*, 145 Ohio St. 379, 61 N.E.2d 790 (1945), paragraph

three of the syllabus. A lack of ability to cross-examine a witness not competent to testify implicates the Confrontation Clause of the Sixth Amendment to the Constitution.

{¶ 44} Here, that right was not impinged. The court held a competency hearing where it was established that Taylor understood the nature of the proceedings and knew the importance of telling the truth. The state also supplied the court with Taylor's videotaped police interviews that demonstrated his ability to comprehend and answer questions. The preliminary results of a competency evaluation that found Taylor was competent to stand trial was relayed to the court as well.

{¶ 45} Taylor's testimony also does not indicate it should have been excluded. He testified he ran into Harris and appellant standing outside a white truck around East 99th Street. He said he did not participate in the robbery, although Harris asked if he knew anyone who had weed that they could rob. Taylor said he walked to Don'Tel's house, bought weed, smoked some with Don'Tel, and got a ride to his sister's house.

{¶ 46} His testimony was contradictory at times, but he understood the questions being asked of him. A more likely explanation for the contradictory nature of his testimony was that he was attempting to minimize any involvement he and appellant had with the burglary and murder. The trial court did not err in allowing Taylor to testify.

*White*, 2015 WL 3794576, at **9-10.

In his Traverse, White maintains that Taylor was incompetent to stand trial, depriving him of a fundamentally fair trial, because of the following: preliminary IQ testing on Taylor indicated a score of between 65-70; he was not able to provide his last street address and was in county jail during the time of trial; he could not identify any of the streets surrounding the place where he had lived; he was unable to place the months of the year in order, i.e., he stated that January comes after February and October after November and, therefore, did not grasp the concept of "before" and "after"; did not know what year he was arrested; responded "I don't know" to the following question posed by the trial court: "[w]hat do you think would happen if you came into court, and you were asked questions, and you had lied about the answers?"; did not know what the job of his own defense counsel was; and could not spell "Friday" or his mother's last name, Mason.  Doc. 12, pp. 3-4.

12

First, the undersigned notes, as the state Court of Appeals found, that Taylor had preliminary IQ testing, at the request of his defense counsel, and that the doctor performing that testing opined that Taylor had the ability to recall and recite facts and was competent to testify. Doc. 9, p. 333.  Taylor also admitted that, despite his sparse testimony during the competency hearing and his professed inability to spell, he was far more articulate and spoke much more freely in his videotaped interview with the homicide unit that lasted almost an hour and that, if one looked at text messages that he sent to others, it seemed that he could spell "just fine."  Doc. 9, pp. 347, 353.  Moreover, it does not follow that an inability to spell renders a witness incompetent to testify as to the events that occurred on the day in question.  And, despite some back-and-forth questioning, Taylor testified that he did know what role his defense attorney played: to help him.  Doc. 9, pp. 345-346.

Furthermore, although Taylor stated during his competency hearing that he did not know any street names (Doc. 9, p. 338), he later testified on direct examination that he knew White from "the neighborhood," which he identified as the area around East 99th Street and St. Clair (Doc. 9, pp. 358-359), and stated that, on the day Don'Tel was killed, he had started off on the west side of Cleveland, on Madison; caught a bus to the east side (Doc. 9, pp. 367-369); stood around on East 96th Street before walking over to 99th Street and meeting White (and that White was in or standing by a white truck) and then he walked to Don'Tel's house (Doc. 9, pp. 369-370, 372, 377); after he left Don'Tel's house, he walked back down 99th Street and over to 96th Street to get a ride to his sister's house, which was on East 162nd Street and St. Clair (Doc. 9, pp. 383-385); that he had to leave her house after about 10 minutes because she asked him to leave after learning that Don'Tel had been shot, so he caught the bus to the west side (Doc. 9, pp. 386-388) to an apartment on West Boulevard off Detroit (Doc. 9, p. 364).  In other words, Taylor knew street names.  His testimony also showed that he grasped the concept of "before" and

13

"after." The state Court of Appeals' determination that the likely explanation for the "contradictory nature" of Taylor's testimony was his attempt to minimize his involvement and White's involvement in the killing of Don'Tel is supported by the record; it cannot be said, therefore, that Taylor was incompetent to testify and that the admission of his testimony could be said to have infringed upon White's due process rights or deprived him of a fundamentally fair trial. *See Pulley*, 465 U.S. at 41. Ground 1, therefore, does not describe a violation of federal law and is not cognizable on federal habeas review.

### 2. Ground 3

In Ground 3, White argues that his Sixth Amendment right was violated when the trial court allowed witnesses to improperly utilize cell phone records, without a proper foundation, to provide testimony. Doc. 1, p. 6.

The Sixth Amendment's Confrontation Clause provides, "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. CONST. Amend. VI. A witness's testimony is inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309 (2009) (citing *Crawford v. Washington*, 541 U.S. 36, 54 (2004)). "Business and public records are generally admissible absent confrontation ... because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Id.* at 324. However, "[a] document created solely for an 'evidentiary purpose,' ... made in aid of a police investigation, ranks as testimonial." *Bullcoming v, New Mexico*, 564 U.S. 647, 664 (2011).

The Ohio Court of Appeals considered White's claim:

> *ii. Cell Phone Records*

{¶ 47} Appellant also suggests that cell phone records were improperly used by the state throughout trial and admitted as evidence. He claims this violated his constitutional right to confront the witnesses against him. The Sixth Amendment to the Constitution preserves the right of a criminal defendant "to be confronted with the witnesses against him." The United States Supreme Court stated that the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." The Sixth Amendment to the United States Constitution, in its Confrontation Clause, preserves the right of a criminal defendant "to be confronted with the witnesses against him." *Crawford v. Washington*, 541 U.S. 36, 53–54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

> The key issue is what constitutes a testimonial statement: "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Davis v. Washington*, 547 U.S. 813, 126 S.Ct. 2266, 2273, 165 L.Ed.2d 224 (2006).

*State v. Hood*, 135 Ohio St.3d 137, 2012–Ohio–2260, 984 N.E.2d 1057, ¶ 33. However, business records are, by their nature, nontestimonial. *Id.* at ¶ 34, citing *Crawford* at 56. This removes them from purview of the Confrontation Clause. *Id.*

{¶ 48} The state asked witnesses questions using various cell phone records. The state asked witnesses if they recognized phone numbers contained within these records prior to authentication of the records. Those questions generally, but not always, came after the witnesses could not remember their own phone numbers or those of close acquaintances. The trial court sustained many objections made when the state attempted to use the records without laying a proper foundation. The court also excluded records from admission during trial.

{¶ 49} Appellant argues the state did not ask questions of witnesses who possessed cell phones to testify about the calls or texts that appeared in the records. This, appellant asserts, prevented him from cross-examining these witnesses about the content of calls and text messages.

{¶ 50} On reconsideration, the Ohio Supreme Court found where a police officer testified to cell phone records without proper authentication as a business record under Evid.R. 803(6), the statements contained in the records were testimonial in nature and subject to heightened harmless-error analysis. *Hood*, 135 Ohio St.3d 137, 2012–Ohio–2260, 984 N.E.2d 1057. Here, the records were properly authenticated as business records through the testimony of a Revol Wireless employee, Lauren Maysey.

> "To qualify for admission under Rule 803(6), a business record must manifest four essential elements: (i) the record must be one regularly recorded in a regularly conducted activity; (ii) it must have been entered by a person with knowledge of the act, event or condition; (iii) it must have been recorded at or

near the time of the transaction; and (iv) a foundation must be laid by the 'custodian' of the record or by some 'other qualified witness.'"

*State v. Davis*, 116 Ohio St.3d 404, 2008–Ohio–2, 880 N.E.2d 31, ¶ 170, quoting Weissenberger, Ohio Evidence Treatise 600, Section 803.73 (2007).

{¶ 51} Maysey testified that she was an employee of Revol Wireless familiar with the records introduced by the state. She was the individual who compiled the records in response to a state subpoena. She testified the records were kept in the ordinary course of business. The data contained in the records were generated by an individual's cell phone activity at the time it occurred. Maysey's testimony satisfied the requirements of Evid.R. 803(6). Therefore, the trial court did not abuse its discretion in admitting these as business records.

{¶ 52} Further, the court did not admit records of text messages that were not the subject of testimony by the witnesses who sent or received the texts. The court excluded records of these texts, but allowed the business records of call logs with accompanying cell phone tower data to be admitted as evidence.

{¶ 53} Appellant complains Maysey admitted she did not have any technical expertise about cell phone towers or could not testify about the reliability of cell tower locations. However, this goes to the credibility of the evidence, not its admissibility as a business record. Therefore, the trial court did not err in allowing questions regarding the records or their admission as evidence in this case.

*White*, 2015 WL 3793476, **10-11.

As the Ohio Court of Appeals explained, the cell phone records were properly authenticated and, therefore, were not testimonial. Thus, White does not describe a Confrontation Clause violation.

To the extent White alleges a constitutional violation because the state did not "examine the witnesses who allegedly owned or possessed the cell phones about the calls" (Doc. 1, p. 6), this claim is also not cognizable. That the state did not ask state witnesses certain questions during direct examination does not describe a Confrontation Clause violation. Moreover, as the state Court of Appeals noted, text messages were not admitted into evidence when the person who sent or received the text did not provide testimony about the text message. Accordingly, Ground 3 does not describe a constitutional violation and is not cognizable.

### 3. Ground 4

In Ground 4, White argues that his Fourth Amendment rights were violated when his mail was seized without a warrant and used as evidence at trial. Doc. 1, p. 7. The Ohio Court of Appeals considered this claim:

*iii. Prison Letters*

{¶ 54} The Fourth Amendment protects against invasions of one's privacy by the federal government and is applicable to the states. *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). But this protection exists where a person's expectation of privacy is objectively reasonable. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). While inmates in prison do not lose all constitutional protections, certain restrictions on rights are countenanced where legitimate penological goals so dictate. *Sandin v. Conner*, 515 U.S. 472, 485, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Monitoring a prisoner's non-attorney communications has been repeatedly upheld as a legitimate practice to advance legitimate penological interests. *United States v. Sababu*, 891 F.2d 1308, 1329 (7th Cir.1989) ("in prison, official surveillance has traditionally been the order of the day").

{¶ 55} When addressing the recording and monitoring of prison inmates' telephone conversations, at least one Ohio court has found that penological concerns outweighed any expectations of privacy. *State v. Wolfe*, 12th Dist. Madison No. CA99–11–029, 2000 Ohio App. LEXIS 5782, 2000 WL 1818939 (Dec. 11, 2000). That court relied on a Second Circuit court case holding the following:

> [N]oninmate mail to prisoners may be subject to inspection; and noninmate visitors may have their conversations with inmates monitored, or be subject, based upon reasonable suspicion, to strip searches. With respect to telephone communications, the public is on notice pursuant to regulations * * * that prison officials are required to establish procedures for monitoring inmates' calls to noninmates. Given the institution's strong interest in preserving security, we conclude that the interception of calls from inmates to noninmates does not violate the privacy right of noninmates.

(Citations omitted.) *United States v. Willoughby*, 860 F.2d 15, 21–22 (2d Cir.1988).

{¶ 56} "This lessened privacy right is especially appropriate where the non-inmate is aware of institutional policies herself or is aware that her conversations with an inmate may be monitored." *Wolfe* at *38, citing *United States v. Sababu*, 891 F.2d 1308, 1329 (7th Cir.1989).

{¶ 57} The letters appellant complains were improperly admitted were the written communications of an individual in county jail. While incarcerated, appellant wrote a letter to Maurice Gibson, also incarcerated, to convince Gibson to write a letter to Taylor.

Gibson did send a letter to Taylor at a juvenile facility asking him to tell the truth. Gibson also sent appellant a letter explaining that he had sent Taylor a letter as appellant requested.

{¶ 58} These letters were sent to and from individuals in jail. Both the sender and receiver knew or should have known of the policy of the facilities to inspect and review correspondence. Neither party had a legitimate expectation of privacy. Further, appellant did not file a suppression motion to exclude these letters or the testimony of Maurice Gibson, the individual whose mail was admitted as evidence.

{¶ 59} Neither appellant or Gibson had a reasonable expectation of privacy in the jailhouse correspondence seeking to have Gibson send a letter to Taylor. The trial court did not err in admitting those letters. This assigned error is overruled.

*White*, 2015 WL 3794576, at **11-12.

In *Stone v. Powell*, the United States Supreme Court held, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  428 U.S. 465, 494 (1976).  In order for the rule of *Powell* to apply, the state must have provided, in the abstract, a mechanism by which to raise the Fourth Amendment claim and the presentation of that claim must not have been frustrated by failure of that mechanism.  *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982). "[T]he *Powell* 'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim."  *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013), *cert. denied*, 135 S.Ct. 1174 (2015).  Instead, when considering whether a petitioner had a full and fair opportunity to litigate his Fourth Amendment claim, the court "asks a more basic and readily administrable question: Did the state courts permit the defendant to raise the claim or not?"  *Id*. at 640.

Ohio has a mechanism in place for resolving Fourth Amendment claims; it provides a defendant the opportunity to file a pretrial motion to suppress and the opportunity to take a direct

appeal from the denial of the motion to suppress.  *See Riley*, 674 F.2d at 526 (finding that Ohio criminal and appellate rules provide adequate procedural mechanisms for litigation of Fourth Amendment claims).  White partially availed himself of that mechanism; he did not file a motion to suppress in the state trial court, but he included a claim alleging a violation of his Fourth Amendment right based on the admission of prison letters in his direct appeal to the Ohio Court of Appeals (Doc. 8-1, p. 40), which the Ohio Court of Appeals considered.  That the state Court of Appeals rejected White's claim does not allow White to sidestep the rule in *Powell*.  *See Moore v. Cowan*, 560 F.2d 1298, 1302 (6th Cir. 1977) (*Powell* applies to bar Fourth Amendment claims from habeas review even when the state court of appeals did not discuss the merits of the petitioner's claim on direct review but instead applied harmless error: "We do not read *Stone v. Powell* as requiring the reviewing court to do more than take cognizance of the constitutional claim and render a decision in light thereof."); *Good*, 729 F.3d at 638-639 (discussing *Moore* and stating that, consistent with *Moore*, "the *Powell* 'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim.").

White does not argue that the state court prevented him from litigating his Fourth Amendment claim.  He only argues that his letters were seized without a warrant and without probable cause.  Doc 1, p. 7.  The Ohio Court of Appeals disagreed.  It cannot be said that the state courts denied him the ability to raise his claim.  *See Good*, 729 F.3d at 640.  Because White cannot demonstrate that he was denied the opportunity to fully and fairly litigate his Fourth Amendment claim, federal habeas review of this ground for relief is barred by *Stone v. Powell*.[4] Accordingly, Ground 4 is not cognizable.

---

[4]  In his Petition, White only asserts that his Fourth Amendment right was violated.  Doc. 1, p. 7.  To the extent that the supporting facts also complain about the trial court's evidentiary rulings with respect to Gibson's authentication of White's handwriting (Doc. 1, pp. 7-8), this does not describe a Fourth Amendment violation.  Moreover, Gibson

**B. Ground 2 fails on the merits**

In Ground 2, White argues that his convictions were against the sufficiency of the evidence.  Doc. 1, p. 5.  In reviewing a claim that a petitioner's conviction was not supported by sufficient evidence, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  Under this standard, deference is due the jury's determination.  *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  The standard is not whether the trier of fact made the correct guilt or innocence determination but, rather, whether it made a rational decision to convict or acquit.  *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  Thus, in making a determination as to sufficiency of evidence, a court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury."  *Brown*, 567 F.3d at 205; *see also Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).  "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt."  *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (internal quotations and citations omitted); *see also Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007) ("circumstantial evidence is entitled to equal weight as direct evidence").

On federal habeas review, an additional layer of deference applies.  *Brown*, 567 F.3d at 205; *Snyder v. Marion Corr. Inst., Warden*, 608 Fed. App'x 325, 327 (6th Cir. 2015) (indicating that, where a petitioner's "claims arise in the context of a § 2254 petition, [the court's analysis] must be refracted through yet another filter of deference") (citing *Coleman v. Johnson*, — U.S. —, 132 S.Ct. 2060, 2062, 182 L.Ed.2d 978 (2012) (per curiam) which reaffirmed that sufficiency of the evidence claims under *Jackson* "face a high bar in federal habeas proceedings because

properly testified as a lay witness and identified White's handwriting based on his familiarity with White's handwriting.  *See* Ohio Evid. R. 701, 901(B); Doc. 9, pp. 955, 959, 961 (Gibson's testimony).

they are subject to two layers of judicial deference").  Accordingly, even if this Court were to conclude that a rational trier of fact could not have found petitioner guilty beyond a reasonable doubt, the Court "must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable."  *Brown*, 567 F.3d at 205 (emphasis in original); *see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

The Ohio Court of Appeals considered White's sufficiency claim:

### A. Sufficiency

{¶ 15} When analyzing whether a conviction is supported by sufficient evidence, a reviewing court examines the evidence admitted at trial and determines whether such evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. Where a conviction is supported by legally sufficient evidence, the state has adduced evidence of the offender's guilt as to every necessary element of the crime. *Id*. This court views the evidence so adduced in a light favorable to the state without taking into consideration matters of credibility.

### i. Aggravated Murder and Murder

{¶ 16} Appellant was found guilty of two counts of aggravated murder. The first required the state to show that appellant purposely caused the death of another with prior calculation and design under R.C. 2903.01(A). The second required the state to show appellant purposely caused the death of another "while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, * * * aggravated burglary * * *." R.C. 2903.01(B).

{¶ 17} Appellant was also found guilty of murder as defined in R.C. 2903.02(B): "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903 .04 of the Revised Code."

{¶ 18} Prior calculation and design has a specific legal meaning defined by years of judicial interpretation. Case law distinguishes those acts which erupt abruptly without studied consideration from those that are the result of planning and deliberation. However, in certain situations, a moment's consideration is sufficient to satisfy this element where a plan is conceived with a purposeful desire to kill.

> The state can prove "prior calculation and design" from the circumstances surrounding a murder in several ways: (1) evidence of a preconceived plan leading up to the murder, (2) evidence of the perpetrator's encounter with the victim, including evidence necessary to infer the defendant had a preconceived

notion to kill regardless of how the robbery unfolded, or (3) evidence that the murder was executed in such a manner that circumstantially proved the defendant had a preconceived plan to kill. *See, e.g., State v. Cassano*, 96 Ohio St.3d 94, 2002–Ohio–3751, 772 N.E.2d 81; * * * *State v. Campbell*, (2000) 90 Ohio St.3d 320, 2000–Ohio–183, 738 N.E.2d 1178.

*State v. Trewartha*, 165 Ohio App.3d 91, 2005–Ohio–5697, 844 N.E.2d 1218, ¶ 19 (10th Dist.). The third method allows the state the means to establish a perpetrator acted with prior calculation and design where the victim is killed in a cold-blooded execution-style manner. *State v. Hough*, 8th Dist. Cuyahoga No. 91691, 2010–Ohio–2770, ¶ 19.

{¶ 19} The closest statement from the Ohio Supreme Court interpreting the requirements for prior calculation and design with facts similar to the present case occurred in *State v. Goodwin*, 84 Ohio St.3d 331, 703 N.E.2d 1251 (1999). There, an individual entered a store desiring to steal money. The perpetrator put a gun to a store clerk's head. *Id.* at 344, 703 N.E.2d 1251. The clerk was cooperating and had his hands in the air and was then shot to death by the robber. *Id.* This execution, said the court, was a planned killing in order to further the plan to obtain money from the store. *Id.* The court held that the element of prior calculation and design was demonstrated. *Id.* The killing would have occurred regardless of how the robbery progressed. The killer did not flee immediately from the store, but demanded money from the remaining clerk. *Id.*

{¶ 20} This holding should be distinguished from other cases of the "robbery-gone-wrong" sort. Simply having a firearm during the commission of a robbery and being prepared to use it does not evidence prior calculation and design. *State v. Noggle*, 140 Ohio App.3d 733, 748, 749 N.E.2d 309 (3d Dist.2000). *See also State v. Reed*, 65 Ohio St.2d 117, 418 N.E.2d 1359 (1981).

{¶ 21} In the present case, the trial court found that appellant and Harris had a planned contingency to kill Don'Tel if he resisted. This was sufficient, in the trial court's mind, to meet the elements of prior calculation and design. This conclusion does not appear in line with the Ohio Supreme Court's decision in *Goodwin*. The fact that appellant and Harris entered the home with guns and discussed the possibility that Don'Tel may be armed does not evidence, in itself, a preconceived plan to kill.

{¶ 22} However, Kimmetta testified that she observed the men shoot her son while his hands were up. This is similar to the events that occurred in *Goodwin* and evidences a preconceived plan to shoot Don'Tel regardless of how the robbery progressed. While Harris's testimony indicates appellant shot Don'Tel because Don'Tel reached for a gun, conflicting evidence does not lead to the conclusion that appellant's conviction is not supported by sufficient evidence. Kimmetta's testimony indicates appellant and Harris had a preconceived plan to kill Don'Tel and this satisfied the prior calculation and design element of aggravated murder under R.C. 2903.01(A).

{¶ 23} There is overwhelming evidence that appellant and Harris entered the apartment without permission with operable firearms to rob Don'Tel of marijuana, and that one of these two men purposefully shot Don'Tel during the commission of this burglary. Trial

testimony exists identifying appellant as the individual that shot Don'Tel. This evidence presented at trial, viewed in a light favorable to the state, establishes each element of aggravated murder under R.C. 2903.01(B). This evidence also established there is sufficient evidence to support appellant's conviction for murder.

### ii. Aggravated Burglary

{¶ 24} Appellant was convicted of aggravated burglary under two subsections of R.C. 2911.11(A). This statute criminalizes the trespass in an occupied structure by force, stealth, or deception, with purpose to commit in the structure any criminal offense, if "(1) The offender inflicts, or attempts or threatens to inflict physical harm on another; (2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control."

{¶ 25} The evidence adduced at trial establishes that appellant and Harris concocted a plan to rob Don'Tel of marijuana. The testimony of Harris, Taylor, and Johnson all indicate such. Harris and appellant forced their way into an occupied structure while in possession of operable firearms with the intent to commit multiple felonies while inside. Once inside, they also inflicted and threatened to inflict physical harm to Don'Tel, Kimmetta, and Special. Therefore, the convictions for aggravated burglary are supported by sufficient evidence.

### iii. Felonious Assault

{¶ 26} Appellant was found guilty of three counts of felonious assault against two victims. R.C. 2903.11 defines felonious assault. As it relates to the present case, it specified that no person shall knowingly "[c]ause serious physical harm to another * * * " or "[c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." R.C. 2903.11(A)(1) and (2).

{¶ 27} Appellant was found guilty of violations of R.C. 2903.11(A)(1) and (A)(2) related to Don'Tel and R.C. 2903.11(A)(2) related to Kimmetta. As earlier discussed in the analysis of the aggravated murder and murder charges, evidence exists in the record demonstrating that appellant shot and killed Don'Tel. This necessarily includes a finding that appellant caused serious physical harm or caused physical harm with a deadly weapon.

{¶ 28} Kimmetta testified that upon entering the apartment, one of the perpetrators put a gun to her chest and said "[y]ou know what the f* *k time it is." She also testified that after appellant shot her son, he chased her into a bedroom and she pled for her life with him standing there with the gun. "The act of pointing a deadly weapon * * * at another, coupled with a threat that indicates an intention to use the weapon to cause harm, is sufficient evidence to sustain a conviction for felonious assault under R.C. 2903.11(A)(2)." *State v. Velez*, 3d Dist. Putnam No. 12–13–10, 2014–Ohio–1788, ¶ 68, citing *State v. Henderson*, 10th Dist. Franklin No. 10AP–1029, 2011–Ohio–4761, ¶ 14, citing *State v. Mincy*, 1st Dist. Hamilton No. C–060041, 2007–Ohio–1316, ¶ 67, and *State v. Green*, 58 Ohio St.3d 239, 569 N.E.2d 1038 (1991), syllabus.

*iv. Kidnapping*

{¶ 29} R.C. 2905.01 defines the criminal offense of kidnapping. Appellant was found guilty of violating R.C. 2905.01(A)(2) and (A)(3):

> No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
>
> * * *
>
> (2) To facilitate the commission of any felony or flight thereafter;
>
> (3) To terrorize, or to inflict serious physical harm on the victim or another[.]

{¶ 30} Appellant and Harris restrained the liberty of Kimmetta using threats of violence during the commission of an aggravated burglary. Harris testified he stayed behind in the kitchen and held Kimmetta and others at gunpoint while appellant went into the front room to rob Don'Tel. During these events, appellant inflicted serious physical harm, i.e. death, on Don'Tel. This testimony establishes that sufficient evidence exists in the record to support appellant's convictions for the kidnapping of Kimmetta under both subsections above.

{¶ 31} Inherent in the shooting of Don'Tel is also a kidnapping under R.C. 2905.01(A)(3). Also, because this occurred during the commission of an aggravated burglary and attempted theft of marijuana, the elements of R.C. 2905.01(A)(2) are also satisfied.

*White*, 2015 WL 3794576, at *3-6.

The Ohio Court of Appeals applied the correct standard to White's sufficiency claim and its determination was not unreasonable. White does not allege otherwise. Instead, he merely states that he was convicted "on purely circumstantial evidence comprised of inconsistent and wholly insufficient testimony, much of it from self-interested people trying to lessen their own punishments." Doc. 12, p. 5. He goes on to detail the alleged circumstantial evidence that was presented against him at trial. Doc. 12, pp. 5-9. But "[c]ircumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Johnson*, 200 F.3d at 992. And, "attacks on witness

24

credibility are simply challenges to the quality of the government's evidence and not to the sufficiency of the evidence."  *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002); *Brown*, 567 F.3d at 205 (when considering a sufficiency of evidence claim in a habeas petition, a court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury.").  White's assertion that no individuals at the scene initially identified him as the shooter despite the fact that White has tattoos on his face is not persuasive in light of his acknowledgement that the intruders wore masks and their faces were "mostly covered."  Doc. 12, p. 5.  In short, the Ohio Court of Appeals' sufficiency determination is not unreasonable and, therefore, this Court must adhere to that decision.  *Brown*, 567 F.3d at 205.

To the extent that White argues that he was erroneously convicted under the Ohio complicity statute, R.C. 2923.03, despite not being indicted under the Ohio complicity statute (Doc. 12, pp. 8-10), this argument fails.  R.C. 2923.03 provides that a defendant may be convicted of an offence upon proof that he was complicit, even though the indictment mentions only the principal offence and does not mention complicity.  *See State v. Herring*, 762 N.E.2d 940, 949 (Ohio 2002), quoting R.C. 2923.03(F) ("A charge of complicity may be stated in terms of this section, or in terms of the principal offense.").[5]

Accordingly, Ground 2 fails on the merits.

---

[5]  Moreover, White never presented this argument to the state courts and, therefore, to the extent he raises this argument here, it is procedurally defaulted.  *See Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (a petitioner court must raise a claim and pursue it through the state's ordinary appellate review procedures or the claim is procedurally defaulted).

## IV. Conclusion and Recommendation

For the reasons stated above, the undersigned recommends that White's habeas Petition

be **DISMISSED** in part and **DENIED** in part because Grounds 1, 3 and 4 are not cognizable and

Ground 2 fails on the merits.

Dated: January 11, 2017

_____

Kathleen B. Burke
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of
Courts within fourteen (14) days after the party objecting has been served with a copy of this
Report and Recommendation.  Failure to file objections within the specified time may waive the
right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir.
1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).